[No. 15310-2-I.   Division One.   June 3, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. CLR, *Appellant.*

---

*Raymond H. Thoenig* and *Anna Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jean E. Kelley, Deputy,* for respondent.

GROSSE, J.—CLR appeals her conviction by the juvenile court of obstructing a police officer. She contends the conviction is not supported by the evidence. We agree and reverse.

CLR knew Officer Striedinger was a member of the vice squad since she had seen and spoken with him in the vice

office a few days before April 11, 1983. On the evening of April 11, Officer Striedinger was on undercover duty in an unmarked pickup truck in civilian clothes. He saw CLR on Fourth Avenue in Seattle and exchanged glances with her. A little later that evening at 11:15 p.m., while in the truck, Officer Striedinger approached a woman standing on the west side of Fourth Avenue. The woman agreed to engage in an act of prostitution after talking to him through the driver's window of the truck. CLR was directly across the street facing the passenger side of the truck. Traffic was light to moderate.

The woman walked around the truck and opened the passenger door. CLR shouted from across the street "he's vice" whereupon the woman closed the door and started to walk away from the truck. Officer Striedinger left the truck and arrested the woman on the sidewalk. He then drove to the other side of the street and arrested CLR for obstructing him. CLR was convicted of obstruction by the juvenile court after a fact–finding hearing at which only Officer Striedinger testified. CLR argues that her conviction is not supported by the evidence.

The standard of review for sufficiency of the evidence is whether,

> after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Italics omitted.) *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (relying on *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)).

RCW 9A.76.020(3)[1] makes it a misdemeanor to knowingly obstruct, hinder, or delay a public servant in the discharge of his official duties. The statute's essential elements are (1) that the action or inaction in fact hinders,

---

[1]RCW 9A.76.020(3) provides:

"Every person who, . . . (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor."

delays, or obstructs; (2) that the hindrance, delay, or obstruction be of a public servant in the midst of discharging his official powers or duties; (3) knowledge by the defendant that the public servant is discharging his duties; and (4) that the action or inaction be done knowingly by the obstructor, *i.e.,* with intent to hinder.[2]

Knowledge that a public servant is engaged in a discharge of official duties is usually apparent from the facts of most obstruction cases because those cases involve a uniformed officer attempting to make an arrest or obtain information in the immediate presence of the person charged with obstruction.[3] Here, proof of the element of knowledge is more difficult.

Officer Striedinger worked undercover. He was not in uniform. His testimony was that he normally would make an arrest away from the scene of initial contact. The evidence shows that CLR was across the street from this arrest. She could not have known that a crime had been committed and that the officer would be proceeding to make an arrest unless she heard the other woman agree to an act of prostitution. There is no dispute in the record that she could not have heard the conversation. There is no proof of the requisite element of knowledge. CLR did not testify and no other evidence on the element of knowledge was presented. The conviction is not supported by the evidence. *State v. Green, supra.*

Proof of the fact of hindering, delaying, or obstruct-

---

[2]*See Cover v. State,* 297 Md. 398, 413, 466 A.2d 1276, 1284 (1983), finding the same four elements for the common law offense of "obstructing or hindering a police officer" after an exhaustive recitation of authorities.

[3]*See State v. Lalonde,* 35 Wn. App. 54, 61, 665 P.2d 421 (1983), affirming a conviction under RCW 9A.76.020(3) for interfering with a uniformed officer's arrest of people at an angry crowd scene by words and gestures; *People v. Cooks,* 58 Cal. Rptr. 550 (Cal. App. Dep't Sup. Ct. 1967), affirming the conviction of a bartender for obstruction solely by verbal interference with a uniformed officer's attempt to obtain identification from a bar patron; and *State v. Anderson,* 46 Ohio St. 2d 219, 346 N.E.2d 776 (1976), affirming a conviction of a passenger for verbal interference with a uniformed officer's arrest of the car's driver.

ing in this case is also deficient. According to Officer Strie-
dinger, he normally makes an arrest after driving away
from the scene in order to not disclose his identity and to
avoid unnecessary on–scene confrontations with passersby.
The testimony as to this arrest was that he was not hin-
dered or delayed in making the arrest except that his future
undercover work *may have been* hindered by exposure of
his identity. This evidence is not sufficient.[4]

Other jurisdictions have addressed the question of
whether one can obstruct an undercover officer by giving a
verbal warning to a third party. Courts have found that
similar obstruction statutes do not apply where there was
no obvious, contemporaneous, illegal activity when the
warning was given. These include warnings by CB radios as
to speed traps, *People v. Longo,* 71 Misc. 2d 385, 336
N.Y.S.2d 85 (Onadonga Cy. Ct. 1971) and *Warrensville
Heights v. Wason,* 50 Ohio App. 2d 21, 361 N.E.2d 546
(1976); exposure of an undercover policeman's identity at a
rock concert, *State v. Jelliffe,* 5 Ohio Misc. 2d 20, 449
N.E.2d 810 (Hamilton Cy. Mun. Ct. 1982) (truthful state-
ment of officer's identity to other rock concertgoers where
there is no evidence of contemporaneous illegal activity
does not hinder an officer from performing his duty); and a
case involving a warning by a blaring car horn at an early
morning hour at a police stakeout, the warning given to any
burglars who may have been present although none were
known to be present and no burglary ensued, *Cover v.
State,* 297 Md. 398, 466 A.2d 1276 (1983). The Maryland
and Ohio cases require an illegal activity at the time of the
warning in order for the warning to be illegal under the

---

[4]Appellant argues the trial court did not make a formal finding of an obstruc-
tion in fact, requiring either a negative finding against the State on that element
under *State v. Jacobson,* 36 Wn. App. 446, 450, 674 P.2d 1255 (1983), or remand
for entry of revised findings and conclusions under *State v. Jones,* 34 Wn. App.
848, 851, 664 P.2d 12 (1983). Any findings necessary to the conviction not set
forth as findings were included in the conclusions of law. These are treated as
findings even though mislabeled. *State v. Pierce,* 23 Wn. App. 664, 669, 597 P.2d
1383 (1979).

obstruction statutes or common law.

■ Appellant attacks RCW 9A.76.020(3) as facially overbroad for punishing protected speech. She contends that she has standing in that regard even if we find, as we have, that she is not adversely affected by the statute's application, citing *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975). That case does recognize that where First Amendment rights are involved an exception to traditional rules of standing will be permitted to allow a party to challenge a statute despite the lack of specific personal infringement. This is a rule of exception, however, and will not be applied where the challenged statute regulates not just "pure speech" but illegal conduct as well. *See State v. Hegge,* 89 Wn.2d 584, 574 P.2d 386 (1978) (relying on *Broadrick v. Oklahoma,* 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973)).[5]

The statute challenged in *Hegge,* former RCW 9.69.080, prevented witness tampering. The court in *Hegge* held that the statute could not be challenged as facially overbroad even though it might regulate only spoken words because it required more than mere speech to convict. That statute required the element of an intent to obstruct justice in order to sustain a conviction for witness tampering. The court held that this element was a sufficient limitation on

---

[5]Indeed, were we to reach the merits of this case it is doubtful that the decision would favor the appellant. As stated in *Broadrick,* at 615: "[F]acial overbreadth adjudication is an exception to our traditional rules of practice . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." (Citation omitted.)

the statute's application to preclude use of the facial overbreadth doctrine and its exception to the normal requisites for standing. The construction and reasoning of the *Hegge* court apply here. The statute under attack, RCW 9A.76-.020(3), is analogous to that challenged in *Hegge*. Both are obstruction of justice statutes and both contain the same limiting element of intent. Since the statute is limited by its terms and CLR has not been adversely affected by its proper application, we will not examine it further. *Hegge,* at 591.

The conviction is reversed.

SCHOLFIELD, A.C.J., and WILLIAMS, J., concur.